**Josephine BROWN, Plaintiff–Appellant,**

v.

**Aristedes ZAVARAS, Robert Furlong, Defendants–Appellees.**

**No. 94–1537.**

United States Court of Appeals, Tenth Circuit.

Aug. 18, 1995.

---

Josephine Brown, plaintiff-appellant, pro se.

Cristina Valencia, Asst. Atty. Gen., Tort Litigation Section (Gale A. Norton, Atty. Gen., Stephen K. Erkenbrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Timothy R. Arnold, Deputy Atty. Gen., and Gregg E. Kay, First Asst. Atty. Gen., with her on the briefs), Denver, CO, for defendants-appellees.

Before SEYMOUR, Chief Judge, MCKAY and HENRY, Circuit Judges.

HENRY, Circuit Judge.

Pro se plaintiff Josephine Brown appeals the summary judgment order of the district court dismissing his 42 U.S.C. § 1983 civil rights action.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291 and remand to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

Mr. Brown is an inmate at the Limon Correctional Facility, a Colorado state prison. In his complaint against two corrections officials, Mr. Brown states that he is a trans-

---

1. Although plaintiff identifies his true gender as female, plaintiff is biologically male and refers to himself with masculine pronouns throughout his pleadings. As is our practice, we refer to litigants as the record suggests they prefer to be addressed.

sexual. The medical term for transsexuality is "gender dysphoria," and gender dysphoria is a medically recognized psychological disorder resulting from the "disjunction between sexual identity and sexual organs." *Farmer v. Haas,* 990 F.2d 319, 320 (7th Cir.) (collecting medical literature), *cert. denied,* — U.S. —, 114 S.Ct. 438, 126 L.Ed.2d 372 (1993); *see also White v. Farrier,* 849 F.2d 322, 325–26 (8th Cir.1988) (noting that gender dysphoria is a medically recognized psychological disorder); *Meriwether v. Faulkner,* 821 F.2d 408, 412 n. 5 (7th Cir.) (same), *cert. denied,* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987); Jan Morris, *Conundrum* (1974) (autobiographical narrative of the life of a transsexual).

Mr. Brown alleged in his complaint that the defendants have violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment equal protection rights. Specifically, he alleged that defendants have withheld medical care with deliberate indifference to his serious medical needs by not providing him with the female hormone estrogen and other medical treatment in contravention of the rule in *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).

After reviewing the complaint, a federal magistrate issued a show cause order stating that he would dismiss the complaint if Mr. Brown did not explain how the defendants personally participated in the alleged constitutional violations and why Mr. Brown felt he was entitled to hormone treatment. Mr. Brown responded that the named defendants were involved in his § 1983 claim, that he was entitled to hormone treatment and "therapy," and that he had an equal protection right to hormone therapy. Rec. vol. I, doc. 5, at 2.

Defendants then filed a motion to dismiss, attaching the Department of Corrections grievance process forms to the motion. Mr. Brown responded to the motion to dismiss with a further explanation of his action. After reviewing the motion and the materials outside the pleadings, the magistrate converted the motion to dismiss into a summary judgment proceeding pursuant to Fed. R.Civ.P. 12(b). The magistrate recommended that Mr. Brown's Eighth Amendment claim be dismissed because Mr. Brown had alleged only that Colorado had failed to provide estrogen treatment.

In his response to the magistrate's recommendation, Mr. Brown asserted that "[t]here has been a total failure by the defendants to provide any kind of medical attention to the plaintiff for his transsexual condition," and argued that the magistrate had not addressed his equal protection argument. Rec. vol. I, doc. 14, at 3. The district court accepted the magistrate's recommendation regarding the Eighth Amendment claim. The district court further noted that Mr. Brown was not a member of a "protected class" and dismissed the equal protection claim. On appeal, Mr. Brown argues that the district court erred in dismissing both his Eighth Amendment and Equal Protection claims.

## II. DISCUSSION

### A. Summary Judgment Conversion

■ We begin by noting that it appears that the magistrate made a procedural mistake in this case by not notifying Mr. Brown that the magistrate was converting the motion to dismiss into a summary judgment motion. A court may convert a Rule 12(b)(6) motion to dismiss into a summary judgment proceeding in order to consider matters outside of the plaintiff's complaint. *Jackson v. Integra Inc.,* 952 F.2d 1260, 1261 (10th Cir. 1991); *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir.1991). In so doing, however, a court must follow Fed R.Civ.P. 12 and 56, which require " 'the trial court [to] give the parties notice of the changed status of the motion and thereby provide the parties to the proceeding the opportunity to present to the court all material made pertinent to such motion by Rule 56.' " *Miller,* 948 F.2d at 1565 (quoting *Ohio v. Peterson, Lowry, Rall, Barber & Ross,* 585 F.2d 454, 457 (10th Cir. 1978)).

In this case, the magistrate relied upon matters outside of the complaint. However, there is no indication in the record that the court notified Mr. Brown of the conversion to a summary judgment proceeding or that he had the opportunity to introduce evidence

supporting his claims. We therefore will not review the district court's grant of summary judgment.

Nevertheless, a district court's failure to comply with Rule 56 is harmless if the dismissal can be justified under Rule 12(b)(6) without reference to matters outside of the plaintiff's complaint. *Miller,* 948 F.2d at 1566. We therefore review this case only under Fed.R.Civ.P. 12(b)(6) and determine whether Mr. Brown's complaint states a cause of action for which relief can be granted.

### B. Eighth Amendment

■ Mr. Brown argues that the defendants have provided inadequate medical care under the Eighth Amendment. Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Estelle,* 429 U.S. at 104, 97 S.Ct. at 291.

■ This circuit was one of the first to consider whether transsexuals had an Eighth Amendment right to estrogen. *See Supre v. Ricketts,* 792 F.2d 958, 962–63 (10th Cir. 1986). We held in the context of that case, where the provision of estrogen was medically controversial, that although prison officials must provide treatment to address the medical needs of transsexual prisoners, the law did not require prison officials to administer estrogen or provide any other particular treatment. *Id.* at 963. Since *Supre,* most courts have reached the same conclusion. *Farmer,* 990 F.2d at 321; *White,* 849 F.2d at

327–28; *Meriwether,* 821 F.2d at 414; *Long v. Nix,* 877 F.Supp. 1358, 1364 (S.D.Iowa 1995); *see also* Connie Mayer, *Survey of Case Law Establishing Constitutional Minima for the Provision of Mental Health Services to Psychiatrically Involved Inmates,* 15 New Eng. J. on Crim. & Civ. Confinement 243 (1989) (discussing transsexual prisoner cases).[2]

The defendants' sole response to Mr. Brown's Eighth Amendment claim is that Mr. Brown failed to raise the issue in the district court. In light of our obligation to construe pro se pleadings liberally, *see Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), we cannot agree. In our view, Mr. Brown claimed a medical need and therefore a general right to medical treatment for gender dysphoria in his complaint. In addition, Mr. Brown clarified his pleadings, specifically alleging that he has not been offered *any treatment at all,* in his response to the magistrate's recommendation. *Cf. Green v. Johnson,* 977 F.2d 1383, 1388–91 (10th Cir.1992) (remanding case to district court for factual development of issues raised in pro se supplemental brief).[3]

We therefore remand to the district court to properly determine whether Mr. Brown is being offered medical care consistent with *Supre.*

### C. Equal Protection

■ Mr. Brown also asserts that he is being denied the equal protection of the laws because *some* prisoners receive estrogen treatment.[4] In this case, the district court

---

**2.** However, in addressing the Eighth Amendment claim of a preoperative transsexual who had taken estrogen before entering prison, the United States District Court for the Western District of Michigan has issued a preliminary injunction ordering prison officials to provide female hormones to the prisoner. *Phillips v. Michigan Dep't of Corrections,* 731 F.Supp. 792, 794 (W.D.Mich.1990), *aff'd,* 932 F.2d 969 (6th Cir. 1991). The court reasoned that the plaintiff "suffer[ed] from a serious medical need," *id.* at 800, and that the denial of hormone treatment constituted cruel and unusual punishment.

Unlike the plaintiff in *Phillips,* however, Mr. Brown has not alleged that he received hormone treatment for gender dysphoria prior to his incarceration. *Phillips* is therefore inapplicable to this case.

**3.** Although the documents defendants attached to their motion to dismiss suggest that it is the policy of the Colorado Department of Corrections to provide preoperative transsexual prisoners who have not taken hormones with counseling rather than hormones, we review Mr. Brown's claim under the Rule 12 standard, referring only to his complaint.

**4.** The documents that defendants attached to their motion to dismiss suggest that Colorado provides hormones to prisoners with low hormone levels and that the state will therefore give estrogen to postoperative transsexuals who suffer from a hormone imbalance. However, as we have noted, we review Mr. Brown's claim under the Rule 12 standard, referring only to his complaint.

observed that transsexuals are not a protected class and dismissed Mr. Brown's equal protection claim.

The Ninth Circuit has held that transsexuals are not a protected class. *Holloway v. Arthur Andersen & Co.*, 566 F.2d 659, 663 (9th Cir.1977). In *Holloway*, the court reasoned that transsexuality did not meet the traditional indicia of a suspect classification because transsexuals are not a discrete and insular minority, and because the plaintiff did not establish that " 'transsexuality·is an immutable characteristic determined solely by the accident of birth' like race, or national origin." *Id.* (quoting *Frontiero v. Richardson*, 411 U.S. 677, 686, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (1973)). A number of courts have adopted the *Holloway* court's holding. *See, e.g., Doe v. Alexander*, 510 F.Supp. 900, 904 (D.Minn.1981); Russell J. Davis, Annotation, *Refusal to Hire, or Dismissal from Employment, on Account of Plaintiff's Sexual Lifestyle or Sexual Preference as Violation of Federal Constitution or Federal Civil Rights Statutes*, 42 A.L.R.Fed. 189, § 5 (1979) (collecting transsexual prisoner cases).

Recent research concluding that sexual identity may be biological suggests reevaluating *Holloway*. *See Equality Found. v. City of Cincinnati*, 860 F.Supp. 417, 437 (S.D.Ohio 1994) (concluding that sexual orientation is an issue beyond individual control), *aff'd in part and vacated in part*, 54 F.3d 261 (6th Cir.1995); *Dahl v. Secretary of the United States Navy*, 830 F.Supp. 1319, 1324 n. 5 (E.D.Cal.1993) (collecting research suggesting that sexual identity is biological). However, we decline to make such an evaluation in this case because Mr. Brown's allegations are too conclusory to allow proper analysis of this legal question. We therefore follow *Holloway* and hold that Mr. Brown is not a member of a protected class in this case. When the plaintiff is not a member of a protected class and does not assert a fundamental right, we determine only whether government classifications have a rational basis. *See Stephens v. Thomas*, 19 F.3d 498, 501 (10th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 516, 130 L.Ed.2d 422 (1994).

Competing standards for resolving a plaintiff's equal protection claim under Rule 12 complicate our analysis when we review a plaintiff's claim under the rational basis standard. In *Wroblewski v. City of Washburn*, 965 F.2d 452 (7th Cir.1992), the Seventh Circuit identified and considered this issue:

> A perplexing situation is presented when the rational basis standard meets the standard applied to a dismissal under Fed R.Civ.P. 12(b)(6). The rational basis standard requires the government to win if any set of facts reasonably may be conceived to justify its classification; the Rule 12(b)(6) standard requires the plaintiff to prevail if "relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). The rational basis standard, of course, cannot defeat the plaintiff's benefit of the broad Rule 12(b)(6) standard. The latter standard is procedural, and simply allows the plaintiff to progress beyond the pleadings and obtain discovery, while the rational basis standard is the substantive burden that the plaintiff will ultimately have to meet to prevail on an equal protection claim.

*Id.* at 459–60. The court then adopted a hybrid approach to reconcile the standards, holding that a plaintiff pursuing an equal protection claim must allege facts sufficient to overcome a presumption of government rationality.

> While we therefore must take as true all of the complaint's allegations and reasonable inferences that follow, we apply the resulting "facts" in light of the deferential rational basis standard. To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications.

*Id.* at 460. Finally, the *Wroblewski* court reviewed possible government rationales for the actions at issue, noted that a court must presume that government actions are rational, and held that the plaintiff's "conclusionary assertions" were insufficient to state a claim under that standard. *Id.; see also Shanks v. Forsyth County Park Auth., Inc.*, 869 F.Supp. 1231, 1236 (M.D.N.C.1994) (applying

*Wroblewski* ). We find the Seventh Circuit's analysis sound and apply *Wroblewski* here.

■ It is a close question as to whether Mr. Brown's complaint raises an equal protection claim under the *Wroblewski* standard. *See Wroblewski,* 965 F.2d at 460 (affirming dismissal, but noting that an allegation that the city acted out of personal animosity towards the plaintiff creates a closer question). However, Mr. Brown's allegations are merely conclusory in that they do not allege the factual basis for an equal protection claim, and even pro se litigants must do more than make mere conclusory statements regarding constitutional claims. *See United States v. Fisher,* 38 F.3d 1144, 1147 (10th Cir.1994) (holding that conclusory allegations are insufficient to support a claim for relief); *Petrick v. Maynard,* 11 F.3d 991, 995 (10th Cir.1993) (holding that a pro se prisoner must do more than make conclusory allegations regarding access to a law library). Thus, even assuming the truth of Mr. Brown's allegation that some prisoners are given hormones and others are not, we hold that his conclusory allegations simply do not state a cause of action for which relief can be granted under an equal protection theory.

We REVERSE and REMAND this matter to the district court for proceedings consistent with this opinion regarding Mr. Brown's Eighth Amendment claim, but AFFIRM the decision of the district court regarding Mr. Brown's equal protection claim.